**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| KAREN HOLBROOK,<br><br>*Plaintiff,*<br><br>v.<br><br>ST. LOUIS COUNTY, MISSOURI, *et al.*,<br><br>*Defendants.* | No. 4:25-cv-01444-MAL |

**MEMORANDUM & ORDER**

Before the Court is the Motion to Dismiss filed by Defendants St. Louis County, St. Louis County Department of Justice Services, Scott Anders, and Darby Howard (Doc. 11). For the following reasons, the motion is **GRANTED**.

## I. Facts & Background

Plaintiff Karen Holbrook brings this Complaint on behalf of her deceased son, Brandon Holbrook ("Decedent"), who Holbrook alleges was in inmate awaiting trial in the St. Louis County Department of Justice Services (Doc. 1 at ¶ 4). Holbrook filed a three-count complaint against St. Louis County, St. Louis County Department of Justice Services ("DJS"), Scott Anders in his official capacity as Director of the St. Louis County DJS, Darby Howard in his official capacity as Deputy Director of the Missouri Department of Corrections,[1] and unknown guards and unknown medical staff in their official capacities (Doc. 1 at 1–2). The Complaint alleges the following.

[1] Defendants note that "Individual Defendants Anders and Howard are no longer employees of Defendant County." (Doc. 11-1 at 5, n. 2). Fed. R. Civ. P. 25(d) provides that when a public officer in an official capacity ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party. The Court therefore swaps Anders and Howard's successors. That said, this is largely a formality as the Court dismisses all claims against Anders and Howard.

Decedent was booked into custody at the Justice Center in St. Louis County on September 16, 2022 to await a bond hearing scheduled for about a week and a half later. *Id.* at ¶ 13. Ten days later, on the day before the scheduled bond hearing, at 2:10 p.m., Defendants Unknown Guard(s) directed everyone to stand up for mandatory counts. *Id.* at ¶ 14. One Unknown Guard told Decedent to get ready, but saw that Decedent was not responding. *Id.* At 3:30 p.m., Defendant Unknown Guard contacted another Unknown Guard about Decedent's unresponsiveness. *Id.* About eight minutes later, two inmates observed that Decedent was unresponsive in his cell. *Id.* at ¶ 15. Fifteen minutes later, an Unknown Guard knocked on Decedent's cell, and when he remained motionless, the guard contacted his superior to unsecure the cell door. *Id.*

Four minutes later, Defendant Unknown Guard entered Decedent's cell and checked for signs of life. *Id.* at ¶ 16. Three minutes later, medical staff arrived and began life-saving measures, including a finger thoracostomy.[2] *Id.* Ten minutes later, the City of Clayton Emergency Team arrived and assumed responsibility for life-saving measures. *Id.* at ¶ 18. Forty minutes later, the Clayton Emergency Medical Team transported Decedent to Barnes-Jewish Hospital and arrived fifteen minutes later, at 5:05 p.m. *Id.* at ¶ 19. The Barnes-Jewish Emergency Department pronounced Decedent dead at approximately 5:12 p.m. *Id.*

The St. Louis County Public Health Office of the Medical Examiner determined the cause of death was fentanyl toxicity "with other conditions of a deeply penetrating wound of left hemithorax." *Id.* at ¶ 20. A private autopsy revealed the depth and length of the penetrating wound to Decedent's left hemithorax was incompatible with a finger thoracostomy or a chest tube placement for hemothorax or pneumothorax. *Id.* at ¶ 21. On the basis of these facts, Holbrook alleges that Decedent was murdered while in custody of DJS but does not explain how Decedent was murdered or who murdered him. *Id.* at ¶ 24.

---

[2] "Finger thoracostomy (FT) involves inserting a finger through a small incision in the chest wall to relieve air or fluid pressure." Mozer-Glassberg et al., *Finger thoracostomy: Significant risks and unproven benefits in prehospital settings*, TRANSFUSION, Feb. 22, 2025, at 99.

Defendants Anders, Howard, St. Louis County, and St. Louis County DJS filed a Motion to Dismiss on December 22, 2025 (Doc. 11). Holbrook filed no response. This Court has original jurisdiction under Counts I and II pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Count III pursuant to 28 U.S.C. § 1367.

## II. Legal Standard

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)). This standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id.* It is not, however, a "probability requirement." *Id.* A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* at 556. At this stage, the Court accepts as true the factual allegations in the complaint. *Id.*

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The well-pled facts must establish more than a "mere possibility of misconduct." *Id.*

## III. Application of Law to Facts

### A. Count I

Count I alleges DJS, Anders, Howard, Unknown Guard, and Unknown Medical Staff were deliberately indifferent to Decedent, resulting in his preventable homicide by not providing him safety and timely and adequate medical treatment (Doc. 1 at ¶¶ 29–39). Defendants move to dismiss on several grounds, including the ground that Holbrook fails to state a claim for deliberate indifference under 42 U.S.C. § 1983 (Doc. 11-1 at 6). Because the Court finds Holbrook fails to state a claim with regard to Count I, it need not address Defendant's other arguments for dismissal.

#### i. Legal Standard

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Smith-Dandridge v. Geanolous*, 97 F.4th 569, 575 (8th Cir. 2024). The Fourteenth Amendment governs a pretrial detainee's deliberate indifference claim, and "extends to detainees at least the same protections that convicted prisoners receive under the Eighth Amendment." *Id.* (internal quotation marks omitted).

Deliberate indifference claims must satisfy an objective and subjective requirement. *Letterman v. Does*, 789 F.3d 856, 861–62 (8th Cir. 2015); *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010). Under the objective prong, a plaintiff must demonstrate conditions posing a substantial risk of serious harm. *Whitson,* 602 F.3d at 923 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To prevail on a deliberate indifference claim regarding medical treatment, the objective element requires the plaintiff to show "that he suffered from objectively serious medical needs…." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (internal brackets omitted). Under the subjective prong, a plaintiff must demonstrate that the "prison official … 'kn[ew] of and disregard[ed]' a substantial risk of harm to an inmate.'" *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (quoting *Farmer*, 511 U.S. at 837).

"Deliberate indifference is equivalent to the criminal law standard of recklessness—a prison official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007) (citation modified). "Negligence is not enough." *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021). Nor is "gross negligence" or "mere disagreement with treatment decisions." *Jolly*, 205 F.3d at 1096. Inadequate medical treatment that may amount to negligence in a state-law tort case may not rise to the level of a constitutional violation because there must be "actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

**ii. Application of Law to Facts**

Defendants argue that the Complaint should be dismissed because it fails to state facts to support the second element of deliberate indifference—that any individual defendant was subjectively aware of a substantial risk of harm to Decedent and deliberately disregarded that risk (Doc. 11-1 at 5). The Court agrees.

With respect to Anders and Howard, Holbrook's only allegation is that they did not observe or prevent Decedent's death (Doc. 1 at ¶ 34). This is insufficient to establish a deliberate indifference claim as it does not establish that Anders and Howard "knew of and disregarded" Decedent's "serious medical need." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006) (holding deliberate indifference claims require a showing that the defendant knew of and disregarded a serious medical need).

With respect to DJS, such *departments* of local government lack separate legal identities and therefore are not suable. *White v. Camden Cnty. Sheriff's Dep't*, 106 S.W.3d 626, 631 (Mo. App. 2003); *Jordan v. Kansas City*, 929 S.W.2d 882, 887–88 (Mo. App. 1996); *Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (holding that departments or subdivisions of city government are not suable entities). Because St. Louis County's charter establishes DJS as a department of St. Louis County, https://perma.cc/B93B-TU66 ("There shall be the departments of … justice

services….") (Article IV Part 1, Section 4.010),[3] it "lacks a legal identity apart from the" County and "is not a suable entity." *Jordan*, 929 S.W.2d at 888. Counts against the St. Louis County Department of Justice Services are accordingly dismissed.

Because Holbrook failed to adequately plead a deliberate indifference claim, the Court grants Defendant's Motion to Dismiss Count I.

**B. Count II**

Count II alleges *Monell* liability against St. Louis County for violating Decedent's Fourteenth Amendment rights (Doc. 1 at 11). The County moves to dismiss Count II on the grounds that Holbrook must allege an underlying constitutional violation (Doc. 11-1 at 9–11).

**i. Legal Standard**

The *Monell* doctrine states that municipalities count as "person[s]" who may be held liable under § 1983 for unconstitutional actions. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978). But "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. "Hence, the existence of a constitutional violation is a threshold issue for a *Monell* claim to move forward." *Rusness v. Becker Cnty., Minnesota*, 31 F.4th 606, 617 (8th Cir. 2022).

**ii. Application of Law to Fact**

As discussed above, Holbrook has failed to demonstrate Anders and Howard were deliberately indifferent to Decedent in violation of his Fourteenth Amendment rights. Additionally, the Court finds that no unknown Defendant was deliberately indifferent to Decedent.

Holbrook alleges that on September 26, 2022, at approximately 2:10 p.m., Unknown Guard(s) directed everyone to stand for mandatory counts (Doc. 1 at ¶ 14). Around this time, Defendant Unknown Guard told Decedent to get ready, but he was

---

[3] "The district court may take judicial notice of public records and may thus consider them on a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

not responding. *Id.* This Unknown Guard contacted another Unknown Guard to check on Decedent. *Id.* At 3:38 p.m., two inmates observed Decedent was unresponsive in his cell. *Id.* at ¶ 15. About fifteen minutes later, a guard knocked on Decedent's cell. *Id.* When Decedent did not respond, the guard contacted his superior to unsecure the cell door. *Id.* About five minutes later, a guard entered his cell and checked for signs of life. *Id.* at 16. Three minutes later, medical staff arrived and began performing life-saving measures. *Id.* at ¶ 17. Ten minutes later, an emergency medical team arrived and assumed responsibility for life-saving measures. *Id.* at ¶ 18. Forty minutes later, the emergency medical team transported Decedent to Barnes-Jewish Hospital. *Id.* at ¶ 19. It is unclear from the Complaint how these actions demonstrate deliberate indifference towards Decedent's medical needs. *See Bryan v. Endell,* 141 F.3d 1290, 1291 (8th Cir. 1998) (holding that some delay in medical care, even if negligent, did not amount to deliberate indifference).

Even though Holbrook did not respond to Unknown Guards at 2:10 p.m., this does not establish deliberate indifference because the Complaint does not establish that prison personnel "actually knew of but deliberately disregarded [an objectively serious medical need]." *Santiago*, 707 F.3d at 990. Not responding to guards does not in and itself indicate a serious medical need. Then, after cellmates observed Holbrook's unresponsiveness at 3:38 p.m., personnel acted to assist Holbrook. There is nothing in the Complaint which indicates that the five minutes between guards knocking on his cell and then entering to check for signs of life amounts to deliberate indifference. The Court is not provided with any information to suggest staff could have entered the cell and administered care more quickly. And even to the extent prison officials could have responded better, the Court notes that "negligence or inadvertence does not rise to the level of deliberate indifference." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Nearly as soon as Decedent was observed to be unresponsive, the unknown guards checked on Decedent and ordered medical care. The Unknown medical staff began performing life saving measures as soon as they arrived at Decedent's cell. Because there is no underlying constitutional tort, there

can be no *Monell* liability. Accordingly, the Court grants Defendant's Motion to Dismiss Count II.

**C. Count III**

Count III asserts a wrongful death claim pursuant to Mo. Rev. Stat. § 537.080 against St. Louis County DJS, Anders, and Howard (Doc. 1 at 13). Holbrook argues that Defendants Anders and Howard were employees and/or agents of Defendant DJS and sues them each in their official capacity (Doc. 1 at ¶ 9–12). Defendants argue that Count III is barred by sovereign immunity and official immunity (Doc. 11-1 at 11–13).

**i. Sovereign Immunity**

**a. Legal Standard**

Sovereign immunity bars suit against a government or public entity, *Allen v. 32nd Jud. Cir*., 638 S.W.3d 880, 886 (Mo. 2022), "unless waived or abrogated or the sovereign consents to suit." *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921 (Mo. 2016). In Missouri, "sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent … modified by statutes in effect prior to that date, shall remain in full force and effect; [except where expressly waived]." Mo. Rev. Stat. § 537.600. Sovereign immunity applies to both the government and political subdivisions. *Metro. St. Louis Sewer Dist*., 476 S.W.3d at 921. "Missouri courts have routinely held that sovereign immunity is not an affirmative defense and that the plaintiff bears the burden of pleading with specificity facts giving rise to an exception to sovereign immunity when suing a public entity." *Richardson v. City of St. Louis*, 293 S.W.3d 133, 137 (Mo. Ct. App. 2009); *KITC Homes, LLC v. City of Richmond Heights*, 642 S.W.3d 318, 323 (Mo. Ct. App. 2022).

**b. Application of Law to Fact**

Holbrook pleads that St. Louis County is a political subdivision of Missouri (Doc. 1 at ¶ 5). Political subdivisions, including counties, are immune from suit under the doctrine of sovereign immunity unless expressly waived. *Brentwood Glass Co.,*

*Inc. v. Pal's Glass Serv., Inc.*, 499 S.W.3d 296, 305 (Mo. 2016).[4] Holbrook has pled no facts suggesting the County has waived sovereign immunity, and Missouri case law suggests the opposite. *Id.* ("[St. Louis] County—as a political subdivision—is immune from suit under the doctrine of sovereign immunity."). Thus, claims against the County are dismissed.

**ii. Official Immunity**

**a. Legal Standard**

Along with sovereign immunity, Missouri also applies the doctrine of official immunity. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). Official immunity "protects a public official from liability if that official acts within the course of his official duties and without malice." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. 2019). While official immunity protects discretionary actions, it "does not provide public employees immunity for torts committed when [they] act[] in a ministerial capacity." *Southers*, 263 S.W.3d at 610. Whether an act is discretionary turns "on the degree of reason and judgment required." *Id.* "A ministerial or clerical duty is one in which a certain act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to [the public official's] judgment or opinion concerning the propriety or impropriety of the act to be performed." *State ex rel. Alsup*, 588 S.W.3d at 191 (citation omitted). Official immunity also does not apply "to discretionary acts … done in bad faith or with malice." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. 1986) (collecting cases). Thus, public employees may be held liable for their tortious acts where they were acting in a ministerial capacity, or where they were acting in bad faith or malice in a discretionary capacity.

Because immunity relieves defendants from not just judgment, but also suit, "[c]ourts applying the doctrine of official immunity must be cautious not to construe it too narrowly lest they frustrate the need for relieving public servants of the threat

---

[4] As discussed in Count I, departments of local government lack separate legal identity and are not suable entities. *White*, 106 S.W.3d at 631. Count III against the St. Louis County Department of Justice Services is accordingly dismissed.

of burdensome litigation." *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495 (Mo. banc 2024) (quoting *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 191 (Mo. banc 2019)). Even acts that are negligent may still be protected from suit under official immunity. *State ex rel. Helms v. Rathert*, 624 S.W.3d 159, 164 (Mo. banc 2021). Official immunity is an affirmative defense and dismissal based on this affirmative defense is appropriate "if the petition clearly establishes 'on its face and without exception' that the claim is barred." *Richardson v. City of St. Louis*, 293 S.W.3d 133, 139 (Mo. Ct. App. 2009) (quoting *Sheehan v. Sheehan*, 901 S.W.2d 57, 59 (Mo. 1995)).

**b. Application of Law to Fact**

With regard to claims against Anders and Howard, these claims are dismissed because official immunity applies. Whether an employee is a public officer and therefore is protected by official immunity depends upon the legal and factual circumstances involved. *State ex rel. Howenstine v. Roper*, 155 S.W.3d 747, 752 (Mo. 2005), abrogated on other grounds by *Southers v. City of Farmington*, 263 S.W.3d 603 (Mo. 2008). The law protects "individuals who, in the face of imperfect information and limited resources, must daily exercise their best judgment in conducting the public's business." *Kanatzar*, 588 S.W.3d at 191. Here, Anders is the acting director of the Justice Center and Howard is the deputy director of the Justice Center (Doc. 1 at ¶¶ 9–10). According to the Complaint, Anders and Howard are either employees or agents of DJS; they provide security for the Justice Center; and they are responsible for contract management, compliance, and development of policies, standards, and regulations to protect the inmates. *Id.* Anders and Howard were acting as public officers because they were conducting the public's business the same way that Missouri cases have found county health directors, public school coaches, and university employees to be doing so.[5] *See State ex rel. Howenstine*, 155 S.W.3d at 752 (applying official immunity to medical director of a Missouri county's health

[5] Holbrook never filed an opposition to the motion to dismiss and so does not argue that Anders and Howard were not "public officials." Nor is there anything in the Complaint suggesting that Anders and Howard were employed by some private entity.

clinic); *Woods v. Ware*, 471 S.W.3d 385, 392 (Mo. App. 2015) (holding coach hired by a Missouri public school was a public employee entitled to official immunity); *State ex rel. Howenstine v. Roper*, 155 S.W.3d 747, 752 (Mo. 2005), abrogated on other grounds by *Southers v. City of Farmington*, 263 S.W.3d 603 (Mo. 2008) (holding the fact an employee was employed by a university was not consequential to determining whether she was a public official).

The two ways a plaintiff may overcome official immunity is to plead facts showing that the action involved was a ministerial act, *Southers*, 263 S.W.3d at 610, or was a discretionary act done in bad faith or with malice. *State ex rel. Twiehaus*, 706 S.W.2d at 446. Holbrook has failed to plead either. *See generally* Doc. 1. A ministerial act "is one in which a certain act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to [the public official's] judgment or opinion concerning the propriety or impropriety of the act to be performed." *State ex rel. Alsup*, 588 S.W.3d at 191 (Mo. 2019) (citation modified). Not only does Holbrook fail to establish that the alleged acts of Defendants were to be performed in a prescribed manner; she explicitly pleads that "Defendants acts and/or omissions, were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of…." (Doc. 1 at ¶ 56). That is exactly the opposite of a ministerial act.

Holbrook likewise fails to plead that the Defendants' actions were taken in bad faith. Holbrook alleges that "[t]he conduct of Defendants as set forth herein was willful, malicious, oppressive, and reckless," (Doc. 1 at ¶ 60), but this is a legal conclusion, not a fact. Conclusory legal allegations "are unsupported by facts [and] will not satisfy this pleading standard." *Watkins v. City of St. Louis, Missouri*, 102 F.4th 947, 953 (8th Cir. 2024). Nothing else in the Complaint suggests that Defendants maliciously failed to supervise or monitor Decedent. *See State ex rel. Love*, 689 S.W.3d at 498 (holding that even if the pleadings established negligence, nothing suggested employees intended to cause injury or death to plaintiff).

Thus, the claims against the individual Defendants are dismissed because Holbrook fails to establish that Anders and Holbrook were acting in a ministerial capacity, or that they were acting in a discretionary capacity but with malice. *See Forester v. May*, 671 S.W.3d 383, 387 (Mo. 2023) ("[W]hen the factual allegations of a petition establish a public employee's challenged actions were within the scope of her official duties and there is no allegation of malice, the defendant may invoke the affirmative defense of official immunity in a motion to dismiss for failure to state a claim."). The Court dismisses Count III.

* * *

At this point, the Court has dismissed all claims against St. Louis County, St. Louis County Department of Justice Services, Scott Anders, and Darby Howard. Holbrook's only remaining causes of action are against Unknown Guards and Unknown Medical Staff. Federal Rule of Civil Procedure 4(m) requires that a defendant be served within ninety days after the complaint is filed, and if the defendant is not served, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specific time." More than ninety days has passed since Holbrook filed her Complaint. *See* Doc. 1 (filed September 24, 2025). Holbrook must show cause by August 28, 2026 why the Court should not dismiss this action against the unknown Defendants for failure to timely effectuate service.

## Conclusion

The Court **GRANTS** Defendants St. Louis County, St. Louis County Department of Justice Services, Scott Anders, and Darby Howard's Motion to Dismiss (Doc. 11).

**SO ORDERED,**

This 14th day of August, 2026.

Maria A. Lanahan
MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE